NOT FOR PUBLICATION                                                      (Doc. No. 12)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____

                                 :

NANCY MILLAR,                                          :

                 Plaintiff,                           :

                                 :          Civil No. 10-4104 (RBK/JS)

          v.                                         :

                                 :          **OPINION**

PITMAN BOARD OF EDUCATION,                   :

                                 :

                 Defendant.                          :

_____ :

**KUGLER**, United States District Judge:

Defendant Pitman Board of Education (the "Board") employed Plaintiff Nancy Millar as a part-time, first-grade mathematics and reading teacher pursuant to a one-year contract. In June 2008, the Board did not renew Plaintiff's employment. Plaintiff asserts claims against the Board for detrimental reliance, gender discrimination, and age discrimination based on the Board's non-renewal of her employment contract. Currently before the Court is the Board's motion under Rule 12(c) to dismiss Plaintiff's claim for detrimental reliance. Because Plaintiff's detrimental reliance claim is based exclusively on representations made by non-members of the Board, and because Plaintiff fails to plead a viable theory of vicariously liability regarding those representations, the Court grants the Board's motion to dismiss Plaintiff's detrimental reliance claim.

## I.     BACKGROUND

Plaintiff alleges that prior to September 2007 she was studying at Gloucester County College to be a registered nurse. While she was studying to be a nurse, Craig Harper, a teacher

with the Board, contacted her about the possibility of working for the Board as an elementary teacher.  At that time, Plaintiff was approximately fifty-one years old, and she had prior experience and training as an elementary school teacher.  Plaintiff initially dismissed Mr. Harper's suggestion because she had completed one year of study towards her nursing degree and she believed that she would forfeit those credits if she accepted a teaching position.

Plaintiff claims that Mr. Harper and his wife, Frances Harper, who is a principal with the Board, insisted that she consider working for the Board.  According to Plaintiff, Mr. and Mrs. Harper told her that although she would begin as a part-time, first-grade teacher, she would receive a full-time position as a second or fifth-grade teacher within a year.  Plaintiff also claims that Mr. and Mrs. Harper told her that she could not obtain a full-time teaching position with the Board unless she first took a part-time position.

Plaintiff alleges that, in reliance on Mr. and Mrs. Harper's representations, she withdrew from the nursing program at Gloucester County College in March 2008 and entered into a one-year Employment Contract with the Board.  Pursuant to the Employment Contract, the Board employed Plaintiff as a teacher from September 1, 2007 to June 30, 2008, with an annual salary of $21,280.  When the Employment Contract expired in June 2008, the Board decided not to renew Plaintiff's employment.

Plaintiff filed the Complaint in the Superior Court of the State of New Jersey asserting claims against the Board for detrimental reliance (Count I), age discrimination (Count II), and gender discrimination (Count III).  In support of Plaintiff's detrimental reliance claim, she alleges that Mr. and Mrs. Harper acted as "agents, representatives, and employees" of the Board. (Compl. ¶ 20).  She claims that Mr. and Mrs. Harper "knew or should have known" that their representations to Plaintiff were false and that their actions were "intentional, wanton and

willful, and in reckless disregard for the consequences to" Plaintiff.  (Id.).  Plaintiff alleges that

she detrimentally relied on Mr. and Mrs. Harper's representations when she withdrew from

Gloucester County College.  Plaintiff does not claim that any member of the Board made any

representations to her regarding future employment.[1]  Her claim is based entirely on

representations made by Mr. and Mrs. Harper.  Plaintiff has not sued Mr. and Mrs. Harper in this

action.

The Board now moves under Rule 12(c) for a judgment on the pleadings dismissing

Plaintiff's "detrimental reliance" claim.  The Board argues:  (1) that Plaintiff cannot demonstrate

reasonable reliance on Mr. and Mrs. Harper's representations because N.J .Stat. Ann. § 18A:27-3

limits teacher contracts to one-year terms; and (2) the Board is immune from Plaintiff's claim

under the New Jersey Tort Claims Act ("TCA").  Plaintiff responds that she reasonably relied on

Mr. and Mrs. Harper's representations notwithstanding N.J. Stat. Ann. § 18A:27-3, and the

Board is not immune because Mr. and Mrs. Harper's representations were not made for the

benefit of the public.

## II.    LEGAL STANDARD

"A Rule 12(c) motion for judgment on the pleadings is treated like a motion to dismiss

under Rule 12(b)(6)."  Bor. of Sayreville v. Union Carbide Corp., 923 F. Supp. 671, 676 (D.N.J.

1996) (citing Turbe v. V.I., 938 F.2d 427, 428 (3d Cir. 1991)).  Under Federal Rule of Civil

Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief

can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe

the complaint in the light most favorable to the plaintiff, and determine whether, under any

reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC

---

[1] The Complaint alleges that various representations were "made to" Plaintiff.  The Complaint does not allege who made those representations.

3

Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In addition to the allegations of the complaint, a court may consider matters of public record, documents specifically referenced in or attached to the complaint, and documents integral to the allegations raised in the complaint. Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 255 n.5 (3d Cir. 2004).

In determining whether a complaint states a plausible claim for relief, a court must conduct a two-part analysis.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense."  Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

## III.    DISCUSSION

Under New Jersey law, a plaintiff may prevail on a detrimental reliance claim (also referred to as promissory estoppel) if she proves:  "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment."[2]  Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 944 A.2d 1,

---

[2] Although not cited or discussed by the parties, there is some authority in New Jersey suggesting that a party may not bring a detrimental reliance claim against a public entity.  In State v. Erie Railroad Co., the New Jersey Supreme Court held that "estoppel must not be invoked against a state when it is acting in its governmental or public capacity."  State v. Erie R. Co., 42 A.2d 759, 765 (N.J. 1945).  The Court explained that because the law presumes

4

19 (N.J. 2008).  Detrimental reliance is a quasi-contract doctrine intended to apply when a party

makes an otherwise unenforceable promise, but justice nevertheless requires that the court

enforce the promise.  Toll Bros., Inc., 944 A.2d at 19; see Woolley v. Hoffmann-La Roche, 491

A.2d 1257, 1267 n.9 (N.J. 1985); Lobiondo v. O'Callaghan, 815 A.2d 1013, 1020 (N.J. Super.

Ct. App. Div. 2003).

The Board argues that the TCA grants the Board immunity from Plaintiff's claim.

However, the Board's immunity argument overlooks a threshold issue.  Plaintiff seeks to hold

the Board liable for statements made by Mr. and Mrs. Harper.  Plaintiff does not allege that the

Board made any representations or assurances to Plaintiff regarding her future employment.

Thus, to succeed on her claim, Plaintiff must allege a viable theory of vicarious liability.

Plaintiff's only allegations relevant to vicarious liability is that Mr. and Mrs. Harper were

"representatives, agents, and employees" of the Board.  (Compl. ¶¶ 15-16).  As discussed below,

that allegation alone cannot sustain a viable theory of vicarious liability.[3]

---

that the scope of a public official's duties is public knowledge, parties contracting with the government must "know the authority of those who seem to act for the state."  Id.  However, notwithstanding Erie Railroad Company, the New Jersey Supreme Court has recognized that estoppel principles "may be invoked [against the government] to prevent manifest injustice."  O'Malley v. Dep't of Energy, 537 A.2d 647, 650-51 (N.J. 1987).  Because the Court concludes that Plaintiff's claim fails because she does not plead a viable theory of vicarious liability against the Board, the Court does not address whether New Jersey law precludes a promissory estoppel claim against a board of education under these circumstances.

[3] Although not addressed by the parties, the distinction between tort and contract law is significant for immunity purposes because "[t]he immunity provided governmental entities under the [TCA] is limited to tort based liability." Pinkowski v. Twp. of Montclair, 691 A.2d 837, 842 (N.J. Super. Ct. App. Div. 1997).  A board of education's contractual liability is governed by the Contractual Liability Act, N.J. Stat. Ann. § 59:13-1, et seq., and the New Jersey Supreme Court has held that a board of education is not immune from liability under the Contractual Liability Act, Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1109 (N.J. 2009); see Allen v. Fauver, 742 A.2d 594, 597 (N.J. Super. Ct. App. Div. 1999) (explaining separate spheres of Contractual Liability Act and TCA).  Ultimately, it is unnecessary for the Court to determine whether Plaintiff's quasi-contract detrimental reliance claim is most appropriately characterized as a tort or contract claim because Plaintiff fails to allege a viable theory of vicarious liability under either tort or contract principles, and the Court need not reach the immunity issue under either the TCA or the Contractual Liability Act.

### A. Is the Board Liable because Mr. and Mrs. Harper were Employees of the Board?

The TCA "does not afford a public entity any specialized immunity when determining whether it is vicariously liable for the acts of its employees." Rogers v. Jordan, 773 A.2d 116, 120 (N.J. Super. Ct. App. Div. 2001). Under the TCA, a public entity "is liable for injury proximately caused by an act or omission of a public employee" only if the employee was acting "within the scope of his employment." N.J. Stat. Ann. 59:2-2; see Rogers, 773 A.2d at 119. To determine whether a public employee is acting with the scope of his employment, New Jersey courts apply common law principles of vicarious liability. Id. Specifically, the New Jersey Supreme Court "has turned to the Restatement [(Second) of Agency] when the issue is whether an employee has acted within the scope of his or her employment." Id. (citing Di Cosala v. Kay, 450 A.2d 508, 513 (N.J. 1982)).

The New Jersey Supreme Court has held that conduct is within the scope of employment if: (1) "it is of the kind [that the servant] is employed to perform;" (2) "it occurs substantially within the authorized time and space limits;" and (3) "it is actuated, at least in part, by a purpose to serve the master." Di Cosala, 450 A.2d at 513 (quoting Restatement (Second) of Agency § 228 (1957)); see Rogers, 773 A.2d at 120 (applying those requirements to liability of public entity under TCA). Thus, "[c]onsideration of whether an employee is within the scope of employment necessarily requires [the court] to examine any special rules and regulations imposed by the employer embracing the duties that an employee is requested or required to perform." Rogers, 773 A.2d at 120.

Here, Plaintiff's detrimental reliance claim is based on her allegation that Mr. and Mrs. Harper represented to her that the Board would offer her a full-time contract to teach second or

6

fifth grade following the expiration of her initial contract.[4]  However, pursuant to N.J. Stat. Ann.

§ 18A:27-1, "[n]o teaching staff member shall be appointed, except by recorded roll call majority

vote of the full membership of the board of education appointing him."  Non-tenured teachers

may receive only one-year contracts, N.J. Stat. Ann. § 18A:27-3, and "a board of education" may

"renew the employment contract of a[n] . . . employee only upon the recommendation of the

chief school administrator and by a recorded roll call majority vote of the full membership of the

board," N.J. Stat. Ann. § 18:27-4.1; see Leang, 969 A.2d at 1109 (holding that non-tenured

teachers do not have a right to renewal of their teaching contracts).

       In view of the statutory framework regulating teacher contracts, the Court finds that even

if all of Plaintiff's allegations are accepted as true, Mr. and Mrs. Harper could not have made the

alleged representations while acting within the scope of their employment.  Even if Mr. and Mrs.

Harper were employed by the Board, New Jersey law prohibits the Board from offering Plaintiff

any guarantee of continued employment beyond her initial one-year contract.  Thus, to the

degree Mr. and Mrs. Harper made representations to Plaintiff regarding continued employment,

they were acting beyond any conceivable scope of employment.  Even if Plaintiff's detrimental

reliance claim is characterized as a tort claim, the Board is not vicariously liable for Mr. and Mrs.

Harper's alleged misrepresentations because they acted outside the scope of their employment.

**B. Is the Board Liable because Mr. and Mrs. Harper Acted as the Board's Agents or Representatives?**

       Plaintiff alleges that the Board should be liable for Mr. and Mrs. Harper's representations

because she reasonably relied on their assurances to her detriment.  For that claim to succeed,

---

[4] The Board asserts that Plaintiff's claim is essentially a claim in tort for fraud.  The Board mischaracterizes Plaintiff's claim.  Plaintiff explicitly pleads a claim for "detrimental reliance," and New Jersey law recognizes an independent, quasi-contract claim for detrimental reliance.  See Toll Bros., Inc., 944 A.2d at 19.  Nevertheless, the distinction between tort and contract is ultimately immaterial in this case because Plaintiff does not plead a viable theory of vicarious liability under either contract or tort principles.

Plaintiff must establish that the Board is vicariously liable for representations made by Mr. and

Mrs. Harper regarding teacher contracts.  Plaintiff fails to allege facts sufficient to establish that

Mr. or Mrs. Harper had actual or apparent authority to make assurances to Plaintiff regarding her

future employment on behalf of the Board.

"Generally, an agent may only bind his principal for such acts that are within his actual or

apparent authority."  New Jersey Lawyers' Fund for Client Protection v. Stewart Title Guar. Co.,

1 A.3d 632, 652 (N.J. 2010) (internal quotation marks and citation omitted).  "Actual authority

occurs 'when, at the time of taking action that has legal consequences for the principal, the agent

reasonably believes, in accordance with the principal's manifestations to the agent, that the

principal wishes the agent so to act.'"  Id. (quoting Restatement (Third) of Agency § 2.01).

The doctrine of apparent authority provides that a principal is liable for the acts of the

agent even if the agent did not have actual authority because "the actions of [the] principal . . .

somehow misle[d] the public into believing that . . . the authority exist[ed]."  Basil v. Wolf, 935

A.2d 1154, 1172 (N.J. 2007) (quoting Arthur v. St. Peters Hospital, 405 A.2d 443, 446 (N.J.

Super. Ct. Law Div. 1979)).  "The key question 'is whether the principal has by his voluntary act

placed the agent in such a situation that a person of ordinary prudence, conversant with business

usages and the nature of the particular business, is justified in presuming that such agent has

authority to perform the particular act in question.'"  Id. at 1172 (quoting Arthur, 405 A.2d at

446).  Thus, apparent authority is determined by the principal's conduct, rather than the agent's

conduct.  Id.; Mercer v. Weyerhaeuser, 735 A.2d 576, 592 (N.J. Super. Ct. App. Div. 1999).

Additionally, under Federal Rule of Civil Procedure 8, a plaintiff must plead facts

sufficient to establish that the asserted agency relationship existed.  Garczynski v. Countrywide

Home Loans, Inc., 656 F. Supp. 2d 505, 512-13 (E.D. Pa. 2009) (holding that under Iqbal, a

plaintiff's conclusory allegations of agency were insufficient to establish actual or apparent authority); Politi v. Peoples Mortg. Corp., No. 10-04194, 2011 U.S. Dist. LEXIS 14744, at *19-20 (D.N.J. Feb. 14, 2011); see also Cabrera v. Jakabovitz, 24 F.3d 372, 386 n.14 (2d Cir. 1994) ("[a]gency is a legal concept which depends upon the existence of required factual elements."). A plaintiff may not simply assert in conclusory terms that a party is another party's agent for purposes of vicarious liability.  See Payan v. GreenPoint Mortg. Funding, Inc., No. 08-6390, 2010 U.S. Dist. LEXIS 133680, at *18-19 (D.N.J. Dec. 17, 2010) (denying claim based on agency relationship because the plaintiff failed to allege facts sufficient to establish agency under New Jersey law); see also Defer LP v. Raymond James Fin., Inc., No. 08-3449, 2010 U.S. Dist. LEXIS 91856, at *31-33 (S.D.N.Y. Sept. 2, 2010) (dismissing a claim predicated on an agency relationship under New York law because the plaintiff did not plead facts sufficient to establish agency); Frison v. WMC Mortg. Corp., No. 09-1733, 2010 U.S. Dist. LEXIS 104558, at *23-24 (S.D. Cal. Sept. 29, 2010) (same); Imageline, Inc. v. CafePress.com. Inc., No. 10-9794, 2011 U.S. Dist. LEXIS 39828, at *12-14 (C.D. Ca. Apr. 6, 2011) (same).

Plaintiff cannot pursue her claim under the doctrine of actual authority.  Under New Jersey law, only a majority of the Board can award teacher contracts and the Board may not delegate that responsibility to individual employees.  Thus, neither Mr. nor Mrs. Harper had actual authority to make the alleged representations on behalf of the Board.

Plaintiff's claim also fails under the doctrine of apparent authority.  Plaintiff's only allegations relevant to the Board's vicarious liability is that Mr. and Mrs. Harper were "representatives, agents, and employees" of the Board.[5]  (Compl. ¶¶ 15-16).  That allegation is a legal conclusion and insufficient to state a claim for vicarious liability against the Board.

---

[5] Defendant denies that allegation in its Answer.

Plaintiff must allege some facts sufficient to demonstrate that the <u>Board</u> "misle[d] the public into believing" that Mr. and Mrs. Harper had the authority to make the alleged representations.  <u>Basil</u>, 935 A.2d at 1172; <u>see</u> <u>also</u> 735 A.2d 576 (holding that apparent authority is based upon conduct by the principal that suggests to the public that the agent is authorized to act on behalf of the principal).  The Complaint does not contain any factual allegations regarding the Board's conduct that could support a claim of apparent authority.[6]  Indeed, the Complaint suggests that Plaintiff's purported reliance on Mr. and Mrs. Harper's representations was based entirely on Mr. and Mrs. Harper's conduct and not any actions by the Board.  In order to pursue a claim against the Board based on apparent authority, Plaintiff must assert some facts sufficient to establish that the Board presented Mr. and Mrs. Harper as its agents.

## IV.  CONCLUSION

The Court grants the Board's motion to dismiss Count I of the Complaint under Federal Rule of Civil Procedure 12(c) because Plaintiff does not plead a viable theory of vicarious liability against the Board.  The Court does not address the Board's remaining arguments.  An appropriate Order shall enter.

---

[6] It is unclear whether, as a matter of law, the doctrine of apparent authority applies to public entities in New Jersey. Many jurisdictions hold that the doctrine of apparent authority does not apply to the liability of government entities. <u>See</u>, <u>e.g.</u>, <u>Fed. Crop Ins. Corp. v. Merrill</u>, 332 U.S. 380, 384 (1947) ("[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."); <u>Brunner v. United States</u>, 70 Fed. Cl. 623, 629 (Fed. Cl. 2006) (providing exhaustive discussion of the doctrine in the federal context); <u>see</u> <u>also</u> <u>Crull v. Sunderman</u>, 384 F.3d 453, 466 (7th Cir. 2004) (listing state authorities).  The New Jersey Supreme Court has not decided the issue.  <u>See</u> <u>Terminal Constr. Corp. v. Bergen County Hackensack River Sanitary Sewer Dist. Authority</u>, 113 A.2d 787, 795 (N.J. 1955) ("It does not become necessary in this case to consider whether the principles of law relating to implied or apparent authority may be applied in the field of municipal, or public corporations' contracts.").  However, the New Jersey Supreme Court has held that apparent authority does not apply to public entities that enter into contracts pursuant to the Local Public Contracts Law.  <u>See</u> <u>St. Barnabas Medical Ctr. v. County of Essex</u>, 543 A.2d 34, 39 (N.J. 1988) ("the law presumes that public contractors operate with knowledge of relevant laws constraining the procedural and substantive discretion and authority of officials with whom they deal").  Thus, the Court does not see any obvious reason why the New Jersey Supreme Court would not extend that principle to public teaching contracts issued pursuant to N.J. Stat. Ann. § 18A:27-3.  However, it is not necessary for the Court to resolve this issue because, as discussed above, even if the doctrine of apparent authority applies in this context, Plaintiff fails to allege facts sufficient to establish Mr. and Mrs. Harper's apparent authority on behalf of the Board.

Dated:  6/13/2011                                              /s/ Robert B. Kugler
                                                               ROBERT B. KUGLER
                                                               United States District Judge